**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| COLUMBUS PIAVE CLUB, FRIENDS OF CHRISTOPHER COLUMBUS FOUNDATION, CONFERENCE OF PRESIDENTS OF MAJOR ITALIAN AMERICAN ORGANIZATIONS, ABRUZZI CLUB, ORDER OF THE SONS & DAUGHTERS OF ITALY, COLUMBUS ITALIAN HERITAGE FOUNDATION, GIACOMO CONTE, COLUMBUS ITALIAN CLUB, THE ESTATE OF EDOARDO ALFIERI, JOHN CARDI, RICK BRUNETTO, and LANDA MASDEA BRUNETTO, <br><br> *Plaintiffs,* <br><br> *v.* <br><br> CITY OF COLUMBUS, ANDREW GINTHER, DIANE NANCE, CHIP SANTER, ELIZA HO, MERJIN VAN DER HEIJDEN, MARY GRAY, MATTHEW MOHR, LISA MCLYMONT, SHELBI TOONE, GAMAL BROWN, GREGORY CORBIN, UNITED STATES DEPARTMENT OF JUSTICE, UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, UNITED STATES DEPARTMENT OF TRANSPORTATION, UNITED STATES DEPARTMENT OF COMMERCE, UNITED STATES DEPARTMENT OF EDUCATION, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF AGRICULTURE, <br><br> *Defendants.* | Civil Action No. 2:26-cv-419 <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> **JURY TRIAL DEMANDED** |

<u>**CIVIL ACTION COMPLAINT**</u>

Plaintiffs Columbus Piave Club, Friends of Christopher Columbus Foundation, Conference Of Presidents Of Major Italian American Organizations, Abruzzi Club, Order Of The Sons & Daughters Of Italy, Columbus Italian Heritage Foundation, the Columbus Italian Club, The Estate Of Edoardo Alfieri, John C. Cardi, Giacomo Conte, Rick Brunetto, and Landa Masdea Brunetto ("Plaintiffs"), by and through their undersigned counsel, hereby files this Civil Action Complaint against Defendants City Of Columbus, Andrew Ginther, Diane Nance, Chip Santer, Eliza Ho, Merjin Van der Heijden, Mary Gray, Matthew Mohr, Lisa McLymont, Shelbi Toone, Gamal Brown, Gregory Corbin, United States Department Of Justice, United States Department Of Housing And Urban Development, United States Department Of Transportation, United States Department Of Commerce, United States Department Of Education, United States Department Of Homeland Security, United States Department Of Agriculture ("Defendants"), alleging as follows:

**<u>NATURE OF THE ACTION</u>**

1.      This case concerns the illegal – and discriminatory – removal of the Christopher Columbus Statue (the "Statue") from Columbus City Hall.

2.      This Statue, depicting the literal namesake of the City of Columbus, had stood proudly since 1955 as a shining symbol of the Italian-American community and the challenges they faced coming to America.

3.      In the summer of 2020, however, Defendant Andrew Ginther ordered the removal of this Statue – notwithstanding his total lack of authority to do so.

4.      There has never been any legal basis for the removal of this Statue, nor is there any legal authority for its continued absence from its intended location outside of Columbus City Hall.

5.      These illegal actions have continued to the present day – entailing a perverse combination of state and federal government actors – and Plaintiffs bring the present action to finally put an end to this ongoing injustice.

6.      For the reasons outlined herein, Plaintiffs respectfully ask that this Court vindicate their constitutional rights, cease the flow of illegal funds to culpable parties, and order the return of the Statue to its rightful location.

## THE PARTIES

7.      Plaintiff Columbus Piave Club (the "Piave Club") is the oldest Italian-American social organization in Central Ohio, and is dedicated to preserving and promoting the rich cultural heritage and traditions of the Italian community in Columbus.[1] Its mailing address is PO Box 580, New Albany, OH 43054.

8.      Plaintiff Friends of Christopher Columbus Foundation ("FOCCF") is an emerging nonprofit operating in the Columbus, Ohio area. Its mission is to preserve and protect the important legacy of Christopher Columbus, including through public artwork commemorating the same.[2] It can be served at 6545 Market Ave. N., Ste. 100, Canton, OH 44721.

9.      Plaintiff Conference Of Presidents Of Major Italian American Organizations ("COPOMAIO") is a national coalition of 74 cultural, educational, and fraternal Italian-American organizations, whose mission is to enhance the image of Americans of Italian descent at all levels of society, and to eliminate prejudice, discrimination, and defamation detractive thereof.[3] It can be served at 140 Riverside Drive, Suite 2602, New York, NY 10024.

---

[1] *See* Columbus Piave Club, *available at* https://www.columbuspiaveclub.com/ (last visited Mar. 24, 2026).
[2] *See* Friends of Christopher Columbus Foundation, *available at* https://www.friendsofcolumbus.org/ (last visited Mar. 24, 2026).
[3] *See* Conference of Presidents of Major Italian American Organizations, *available at* https://copomiao.org/ (last visited Mar. 24, 2026).

3

10. Plaintiff Abruzzi Club is an organization originally formed by recent immigrants from the Abruzzo region of Italy. The purpose of the club is to share traditions, customs, and ideas, as well as to promote fraternal love and camaraderie among the membership.[4] It can be served at 273 Hanawalt Road, Westerville, OH 43081.

11. Plaintiff Order of the Sons & Daughters of Italy, Columbus Lodge 2599 ("OSDI") is an organization dedicated to promoting Italian-American culture, traditions, language, legacies, and contributions.[5] It can be served at 1070 Thomas Lane, Columbus, OH 43220.

12. Plaintiff Columbus Italian Heritage Foundation ("CIHF") is a charitable organization based out of Columbus, OH. It can be served at 1070 Thomas Lane, Columbus, OH 43220.

13. Plaintiff Columbus Italian Club ("CIC") is an organization that "embraces the values of our Italian heritage and emphasizes family, friendships, hard work, fun, food and wine."[6]

14. Plaintiff The Estate of Edoardo Alfieri (the "Estate") is represented by Stefania Maisano and Silvana Maisano. The Estate is an Italian citizen, run by Genovese citizens. It exists to further the legacy and protect the artwork of Edoardo Alfieri. The Estate can be served at Via Sant'Ugo 5/1, 16135 Genoa, GE, Italy.

15. The Piave Club, FOCCF, COPOMAIO, Abruzzi Club, OSDI, the Estate, CIC, and CIHF are referred to herein as the "Organizational Plaintiffs."

16. The Organization Plaintiffs have members that are of Genovese ancestry.

---

[4] *See generally* Abruzzi Club of Columbus, *available at* https://www.abruzziclub.com/ (last visited Mar. 24, 2026).
[5] *See generally* Order Sons and Daughters of Italy in America – Columbus, *available at* https://www.osdia.org/lodge/columbus/ (last visited Mar. 24, 2026).
[6] *See generally* Columbus Italian Club, *available at* https://columbusitalianclub.com/ (last visited Mar. 24, 2026).

17.     Plaintiff Giacomo Conte ("Plaintiff Conte") is an adult individual and Ohio citizen who can be served at 3010 Hayden Rd., Columbus, OH 43235. He is of Italian-American descent.

18.     Plaintiff John Cardi ("Plaintiff Cardi") is an adult individual and Ohio citizen who can be served at 3010 Hayden Rd., Columbus, OH 43235. He is of Italian-American descent.

19.     Plaintiff Rick Brunetto is an adult individual and Ohio citizen who can be served at 3010 Hayden Rd., Columbus, OH 43235. He is of Italian-American descent.

20.     Plaintiff Landa Masdea Brunetto is an adult individual and Ohio citizen who can be served at 3010 Hayden Rd., Columbus, OH 43235. She is of Italian-American descent.

21.     Defendant City of Columbus is the capital and most populous city of the State of Ohio. It can be served at 90 West Broad Street, Columbus, Ohio 43215.

22.     Defendant Andrew Ginther ("Defendant Ginther") is an adult who is the current mayor of the City of Columbus. He can be served at City Hall 2nd Floor, 90 West Broad Street, Columbus, OH 43215.

23.     Defendant Diane Nance ("Defendant Nance") is an adult who was a member of the Columbus Art Commission. She can be served at 111 North Front Street, Columbus, OH 43215.

24.     Defendant Chip Santer ("Defendant Santer") is an adult who was a member of the Columbus Art Commission. He can be served at 111 North Front Street, Columbus, OH 43215.

25.     Defendant Eliza Ho ("Defendant Ho") is an adult who is a member of the Columbus Art Commission. She can be served at 111 North Front Street, Columbus, OH 43215.

26.     Defendant Merjin Van der Heijden ("Defendant Van der Heijden") is an adult who is Chair of the Columbus Art Commission. She can be served at 111 North Front Street, Columbus, OH 43215.

27.     Defendant Mary Gray ("Defendant Gray") is an adult who is a member of the Columbus Art Commission. She can be served at 111 North Front Street, Columbus, OH 43215.

28.     Defendant Matthew Mohr ("Defendant Mohr") is an adult who was a member of the Columbus Art Commission. He can be served at 111 North Front Street, Columbus, OH 43215.

29.     Defendant Lisa McLymont ("Defendant McLymont") is an adult who is Vice Chair of the Columbus Art Commission. She can be served at 111 North Front Street, Columbus, OH 43215.

30.     Defendant Shelbi Toone ("Defendant Toone") is an adult who is a member of the Columbus Art Commission. She can be served at 111 North Front Street, Columbus, OH 43215.

31.     Defendant Gamal Brown ("Defendant Brown") is an adult who is a member of the Columbus Art Commission. She can be served at 111 North Front Street, Columbus, OH 43215.

32.     Defendant Gregory Corbin ("Defendant Corbin") is an adult who is a member of the Columbus Art Commission. He can be served at 111 North Front Street, Columbus, OH 43215.

33.     Defendants Nance, Santer, Ho, Van der Heijden, Gray, Mohr, McLymont, Toone, Brown, and Corbin are referred to herein as the "Art Commission Defendants."

34.     Defendant Ginther, the City of Columbus, and the Art Commission Defendants are then collectively referred to as the "State Defendants."

35.     Defendant United States Department of Transportation ("DOT") is a federal agency that can be served at 1200 New Jersey Avenue SE, Washington, D.C.

36.     Defendant United States Department of Housing and Urban Development ("HUD") is a federal agency that can be served at 451 7th St., SW, Washington, DC 20410.

37.     Defendant United States Department of Justice ("DOJ") is a federal agency that can be served at 950 Pennsylvania Avenue NW, Washington, D.C. 20530.

38.     Defendant United States Department of Commerce ("DOC") is a federal agency that can be served at 1401 Constitution Avenue NW, Washington, D.C. 20230.

39.     Defendant United States Department of Education ("ED") is a federal agency that can be served at 400 Maryland Ave, SW, Washington, DC 20202.

40.     Defendant United States Department of Homeland Security ("DHS") is a federal agency that can be served at 2707 Martin Luther King Jr Ave SE, Washington, DC 20528-0525.

41.     Defendant United States Department of Agriculture ("USDA") is a federal agency that can be served at 1400 Independence Ave SW, Washington, DC 20250.

42.     DOT, HUD, DOJ, DOC, ED, DHS, and USDA are collectively referred to herein as the "Federal Defendants."

## JURISDICTION AND VENUE

43.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case arises out of the Constitution, laws, or treaties of the United States.

44.     Venue is proper in this District under 28 U.S.C. § 1391(b), as several Defendants reside in this District, and a substantial part of the events or omissions giving rise to these claims arose in this District.

45.     Therefore, this Court has proper venue over this matter, and personal jurisdiction over all parties.

## FACTS COMMON TO ALL COUNTS

**a)  The History of the Statue and City of Columbus**

46.     Globally, there are countless countries, provinces, cities, districts, streets, and buildings named after Christopher Columbus, the famed Italian explorer who discovered the New World.

47.     The largest such city in the United States named after Christopher Columbus is Columbus, Ohio.

48.     To further commemorate this illustrious connection between the City of Columbus and the man himself, the City entered into its first "sister cities" agreement on October 12, 1955 – *i.e.* Columbus Day – with Genoa, Italy.[7]

49.     In addition to being a world-renowned center of art, music, and cuisine, the City of Genoa is also famous as the birthplace of Christopher Columbus.

50.     The City of Columbus specifically chose the City of Genoa as its inaugural sister city because of this connection to the former's namesake.

51.     At the signing of this agreement – an event attended by over 100,000 people, or approximately 30% of the City of Columbus' total population at the time – the City of Genoa bequeathed a 22-foot-tall bronze Statue to its counterpart, which such Statue was then to be displayed prominently in front of Columbus City Hall forever more. *See* October 13, 1955 Ohio State Journal, attached hereto as **Exhibit A**.

52.     Among the crowd was Governor Frank Lausche, Senator John W. Bricker, Representative John M. Vorys, as well as a bevy of other state and local officials. *Id.*

53.     Similarly, the Eisenhower Administration sent Special Assistant and diplomat Harold E. Stassen to provide a formal federal endorsement of this exchange, which he did through his public remarks at the unveiling. *Id.*

54.     Weighing three and a half tons, this Statue was crafted by acclaimed Italian sculptor Edoardo Alfieri ("Alfieri"), one of the most successful sculptors of the 20th Century.

55.     In dedicating this Statue to the fellowship between these two cities, Alfieri wrote:

---

[7]     *See Genoa, Italy*, Greater Columbus Sister Cities International, *available at* https://columbussistercities.com/sister-cities/genoa-italy/ (last visited Mar. 24, 2025).

TO THE CITIZENS OF COLUMBUS OHIO

> It is difficult to say everything I feel in one minute. **It is as if I had left a little of my heart in your town.** I feel I am living with you once more these days; I see your river again, your country, the friends of Columbus, as generous as brothers. I see your town-hall again, your kind mayor [Sensenbrenner], and high above you all, my "Cristefer Columbus" so[] much desired by all of you.

> I am glad that **this work of mine** makes all those who look at it think, in the centuries, of the great navigator, and **makes your heart throb with a brotherly love for Genoa**, Cristefer Colombus's birthplace.

> It has been a great joy for me to work and sculpture for you and I hope to be able to see you again, my friends. Health and happiness to the Citizen of Columbus, Ohio.

*See* Letter to Citizens of Columbus, attached hereto as **Exhibit B** (emphasis added).

56. The affection that Alfieri felt for this area was reciprocated by the City of Columbus, which soon thereafter offered him a teaching position at The Ohio State University. *See* January 13, 1956 Letter to Senator Bricker, attached hereto as **Exhibit C**.

57. This exchange of the Statue between the two cities was facilitated by Plaintiff Piave Club, which therefore holds a particularized and special connection to such Statue.

58. Likewise, the Organizational Plaintiffs – comprised of individuals with Genovese ancestry – similarly hold a particularized and special connection to such Statue.

59. The City of Genoa sent Deputy Mayor Giuseppa de Andre to consummate this transaction on its behalf with Columbus Day co-chairmen Edward Wagner and Sal Spalla, along with former Columbus Mayor Sensenbrenner. *See* October 11, 1955 Ohio State Journal, attached hereto as **Exhibit D**.

60. This Statue was donated to the City of Columbus with the *express understanding* and requirement that it be prominently displayed outside Columbus City Hall, as a testament to the intense bond between these two cities, as well as their shared celebration of Italian culture.

9

61. Contemporaneous newspaper accounts of this transfer indicate that the City of Columbus agreed to keep the Statue outside of City Hall "**for eternity**." *See* October 11, 1955 Columbus Citizen, attached hereto as **Exhibit E** (emphasis added).

62. Former Mayor Sensenbrenner's public remarks reaffirm that the Statue was to be maintained and cherished **forever,** in the exact spot in which it was dedicated.

63. Relevantly:

It seems to me that the only logical expression of gratitude would be for us to prove to the people of Genoa and to the whole world, **our sincerity in maintaining international good will.** This means **the carrying forward** of the Democratic principles upon which our nation was founded and which your nation is so ardently striving to strengthen. The people of all nations desire only peace and prosperity. **The people of Columbus accept this statue and will ever cherish** the spirit in which it was tendered to us.

As Mayor of the City of Columbus, Ohio, I fervently pray that the ideals of peace and brotherhood **will always prevail.**

May this statute of your great countryman **serve as an inspiration to both countries for many generations to come.** With the help of God, and the good will of these two nations, **may Italy and America continue in a lasting friendship and peace.**

*See* Former Mayor Sensenbrenner Public Remarks, attached hereto as **Exhibit F** (emphasis added).

64. This arrangement has been reaffirmed over the years, including a **unanimous** resolution of the Columbus City Council in 2015 (the "2015 Resolution"). *See generally* Legislative Summary of 2015 Resolution, attached hereto as **Exhibit G**.

65. This 2015 Resolution was enacted "[t]o acknowledge and celebrate the 60th anniversary of the rich and long standing relationship that Columbus, Ohio USA and Genoa, Italy have fostered; and **to encourage even stronger social, cultural, and business related partnerships** through Sister Cities International **in the years to come.**" *See* Ex. G (emphasis added).

10

66.     It obviously does not strengthen the relationship with the City of Genoa, however, for the City of Columbus to tear down the invaluable Statue that was bequeathed to it as part of this arrangement.

67.     The Statue is an essential element of the Sister Cities Agreement between these two cities – it depicts a famous Genovese man, who is also the namesake of the City of Columbus – and this majestic piece of artwork unifies these two great cities.

68.     Neither the Piave Club, the Estate, nor the City of Genoa, ever consented to the removal of this Statue, which was only given to the City of Columbus under the condition that it be displayed outside of City Hall **forever**.

69.     The Estate holds exclusive rights to the ongoing interests of the deceased Alfieri, including preserving the legacy and location of his artwork.

70.     The State Defendants' actions therefore stand in express violation of the donation agreement, as well as a **unanimous** resolution by the Columbus City Council, and every day that this non-compliance continues is a violation of the same.

### b) Federal Funding Issued in Violation of the National Historic Preservation Act

71.     The National Historic Preservation Act ("NHPA") is a federal statute enacted in 1966 to preserve our Nation's historic buildings, monuments, and artifacts.

72.     It imposes sweeping requirements on federal actors before they approve the disbursement of federal funds or issue permits, including a rigorous preemptive review process.

73.     The Code of Federal Regulations explains that this "process seeks to accommodate historic preservation concerns with the needs of Federal undertakings through consultation among the agency official **and other parties with an interest** in the effects of the undertaking on historic

11

properties, **commencing at the early stages of project planning**." 36 C.F.R. § 800.1(a) (emphasis added).

74. The goal of this process "is to identify historic properties potentially affected by the undertaking, assess its effects and seek ways to **avoid, minimize or mitigate any adverse effects on historic properties**." *Id.* (emphasis added).

75. Notably, this process is **mandatory** – 36 C.F.R. § 800.1(c) includes the qualifier "must" – and the agency "shall ensure that the [historic review] is *initiated early* in the undertaking's planning, so that a broad range of alternatives may be considered during the planning process for the undertaking." *Id.*

76. Federal agencies – including the Defendant agencies – like to pay lip service to the NHPA, promoting their supposedly zealous compliance with the statute.

77. For instance, HUD claims that it "encourages the rehabilitation of historic buildings **and the preservation of irreplaceable resources**[,]" and explicitly acknowledges its obligation "to protect historic properties and to avoid, minimize, or mitigate possible harm that may result from agency actions." *See* **Exhibit H**, pg. 1.

78. Likewise, Defendant DHS' 2011 Report to the Advisory Council on Historic Preservation and the Secretary of the Interior brags that "DHS looks forward to implementing new initiatives and continuing to enhance its existing programs to identify, protect, and use historic properties" and that "DHS is constantly moving forward to meet it mission and stewardship requirements[.]" *See* **Exhibit I**, pg. 14.

79. Columbus City Hall is part of the Columbus Civic Center, an area previously determined to be eligible for inclusion on the National Register of Historic Places as a historic district. *See* Excerpts from Main Street Dam Removal and Scioto Greenways Feasability Study,

attached hereto as **Exhibit J**,[8] pg. 10 (stating that the Columbus Civic Center "was determined eligible for listing in the National Register of Historic Places (NHRP) on September 14, 1988").

80.     Perhaps unsurprisingly, significant amounts of federal funds flow into this district to the State Defendants – despite the Federal Defendants complete failure to abide by their obligations under the NHPA.

81.     This illegal funding since Fiscal Year 2021 is summarized below in **Table 1**:

---

[8] The full version of this report is in the possession of the Columbus Metropolitan Library, but can be accessed electronically at https://digital-collections.columbuslibrary.org/digital/collection/p16802coll28/id/154878 (last visited March 13, 2026).

Table 1: Illegal Federal Funding to the State Defendants

| Grant Number | Agency | Receiving Entities | Total Amount | Exhibit |
|---|---|---|---|---|
| DTFH6116H00013 | DOT | City of Columbus | 32,861,689 | K |
| B-22-MC-39-0009 | HUD | City of Columbus | 7,474,580 | L |
| B-24-MC-39-0009 | HUD | City of Columbus | 7,476,504 | L |
| B-20-MC-39-0009 | HUD | City of Columbus | 7,458,951 | L |
| 15PBJA23GG02325COAP | DOJ | City of Columbus | 1,600,000 | Q |
| 2020ARBX0133 | DOJ | City of Columbus | 995,790 | Q |
| 2020ARBX0044 | DOJ | City of Columbus | 903,289 | Q |
| 067906427 | DOC | Columbus-Franklin County Finance Authority | 900,000 | M |
| 15JOVW23GG02598ICJR | DOJ | City of Columbus | 800,000 | Q |
| 2018MUMUK070 | DOJ | City of Columbus | 799,105 | Q |
| 15PBJA22GG03948DGCT | DOJ | City of Columbus | 750,000 | Q |
| P425F203068 | ED | Columbus Public School District | 728,144 | P |
| 2018ARBXK029 | DOJ | City of Columbus | 647,749 | Q |
| EMW-2024-RA-05000 | DHS | Central Ohio Transit Authority | 636,700 | N |
| P425E203932 | ED | Columbus Public School District | 623,473 | P |
| P063P243046 | ED | Columbus Public School District | 524,520 | P |
| 15JOVW21GK04700HOMI | DOJ | City of Columbus | 500,000 | Q |
| 2020MUBX0084 | DOJ | City of Columbus | 453,542 | Q |
| P063P233046 | ED | Columbus Public School District | 453,459 | P |
| 15PBJA21GG03980MENT | DOJ | City of Columbus | 421,126 | Q |
| 15PBJA24GG02712DNAX | DOJ | City of Columbus | 400,919 | Q |
| 15PBJA23GG01347DNAX | DOJ | City of Columbus | 388,271 | Q |
| 15PBJA22GG01691DNAX | DOJ | City of Columbus | 355,240 | Q |
| P063P223046 | ED | Columbus Public School District | 345,948 | P |
| P063P203046 | ED | Columbus Public School District | 334,254 | P |
| P063P213046 | ED | Columbus Public School District | 315,302 | P |
| 15PBJA24GG01908SMTP | DOJ | City of Columbus | 286,319 | Q |
| 15PBJA21GG03169DNAX | DOJ | City of Columbus | 253,655 | Q |
| P063P253046 | ED | Columbus Public School District | 227,893 | P |
| 15JCOPS23GG02066PPSE | DOJ | City of Columbus | 160,320 | Q |
| 248OH101L3203 | USDA | Columbus Public School District | 99,584 | O |
| ED25CHI0G0256 | DOC | Mid-Ohio Regional Planning Commission | 70,000 | M |
| ED24CHI0G0274 | DOC | Mid-Ohio Regional Planning Commission | 70,000 | M |
| | | **Total** | $ 70,316,327 | |

82.     Such funding includes both amounts that have already been disbursed, as well as funds that have yet to be disbursed.

83.     Shockingly, however, **none** of these awards take into consideration the Federal Defendants' obligations under the NHPA in regards to the Statute, discussed further *infra*.

14

84.     The terms of the Statue's donation were expressly ratified by the federal government, through Special Assistant to the Eisenhower Administration, Harold E. Stassen.

85.     Despite this, the federal government has done **nothing** to preserve and protect the Statue.

**COUNT I**
**(VIOLATION OF THE NATIONAL HISTORIC PRESERVATION ACT)**
**PLAINTIFFS v. FEDERAL DEFENDANTS**

86.     Plaintiffs hereby incorporate by reference all prior paragraphs as if set forth fully at length herein.

87.     The NHPA establishes a national policy to "foster conditions under which our modern society and our historic property can exist in productive harmony[,]" to "provide **leadership in the preservation of the historic property** of the United States[,]" and to "**contribute to the preservation of nonfederally owned historic property** and give maximum encouragement to organizations and individuals undertaking preservation by private means[.]" 54 U.S.C. § 300101(1), (2), & (4) (emphasis added).

88.     Among other things, the NHPA requires that "any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State [], prior to the approval of the expenditure of any Federal funds on the undertaking . . . shall take into account the effect of the undertaking on any historic property." 54 U.S.C. § 306108.

89.     "Undertaking" is defined broadly by the statute and includes "a project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency, including-- (1) those carried out by or on behalf of the Federal agency; (2) those carried out with Federal financial assistance; (3) those requiring a Federal permit, license, or approval; and (4)

15

those subject to State or local regulation administered pursuant to a delegation or approval by a Federal agency." 54 U.S.C. § 300320.

90. Likewise, "historic property" is defined to include "any prehistoric or historic district, site, building, structure, or object included on, or eligible for inclusion on, the National Register, including artifacts, records, and material remains relating to the district, site, building, structure, or object." 54 U.S.C. § 300308.

91. In short, before any federal action is taken or money disbursed, the United States must consider the impact that such action will have on any historic properties.

92. Columbus City Hall is part of the Columbus Civic Center, an area determined eligible for inclusion in the National Register of Historic Places on September 14, 1988. *See generally* Ex. J.

93. Notably, this district is independently eligible under two different bases of the NHPA: "Criterion A for its association with community planning, engineering, politics/government, and transportation in the city of Columbus, and Criterion C for its Art Deco, Neoclassical, and Renaissance Revival architecture." Ex. J, pg. 10.

94. Columbus City Hall has been explicitly found to be a "contributing resource" to this historic designation. *See* Ex. J, pg. 15.

95. Nevertheless, when disbursing the funds outlined in **Table 1**, the Federal Defendants completely failed to take into account ***any*** of their obligations under the NHPA.

96. This includes, most notably, failure to "foster conditions[,]" "provide leadership[,]" or "contribute to the preservation of" the Statue.

97. This omission is glaring – and damning.

16

98.     The Statue is perhaps the most important piece of public artwork in all of Central Ohio, located prominently in an eligible historic district, depicting the literal namesake of the city itself.

99.     The Statue was specifically received by the Eisenhower Administration, in a multilateral international exchange comprising many federal, state, local, and foreign parties.

100.    The Statue is required to be located outside of Columbus City Hall to maintain amicable foreign relations between the Cities of Columbus and Genoa, and the Federal Defendants know this.

101.    There is no excuse for the Federal Defendants' failure to take into account the impact their action would have on the Statue.

102.    Notably, *had* the Federal Defendants taken into consideration the impact their funding would have on the Statue, it becomes eminently obvious that they could quickly put an end to the wrongful conduct by the State Defendants.

103.    The Statue was removed as performative virtue signaling by the State Defendants to appease the fleeting politics of the moment – they are not willing to risk a dime of federal funding to maintain this stale charade.

104.    As such, each of the Federal Defendants individually has the power to compel the return of the Statue at any time, and fulfill their obligations under the NHPA.

105.    Instead, the Federal Defendants ignore such legal obligations, cravenly sending millions of dollars to the State Defendants – despite knowing what these funds will support.

**WHEREFORE**, Plaintiffs respectfully request judgment in their favor, compelling all wrongfully disbursed monies to be returned, prohibition of future funds being transmitted to the

17

State Defendants by the Federal Defendants in violation of the NHPA, as well as costs of suit, attorneys' fees, and such other relief as is deemed just and equitable.

## COUNT II
### (VIOLATION OF UNITED STATES CONSTITUTION )
### PLAINTIFFS v. ALL DEFENDANTS

106.    Plaintiffs hereby incorporate by reference all prior paragraphs as if set forth fully at length herein.

107.    Section 1 of the 14th Amendment guarantees that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 2.

108.    Likewise, the Fifth Amendment prohibits the deprivation of "life, liberty, or property, without due process of law[.]" U.S. Const. amend V.

109.    42 U.S.C. § 1983 allows for a private right of action for any person who is deprived "of any rights, privileges, or immunities secured by the" United States Constitution.

110.    42 U.S.C. § 1988 then allows for the recovery of attorney and expert fees for a prevailing Plaintiff under § 1983.

111.    Plaintiffs, as Italian-Americans, are owed equal protection of the laws.

112.    Italian-Americans constitute a cognizable racial group through their common ancestry, cultural heritage, and history of discrimination.

113.    The State Defendants' discrimination against Italian-Americans, enacted under color of state law, violates these federal rights.

18

114. No other racial or ethnic group was targeted by the State Defendants to be the subject of this discrimination, and such Defendants chose Christopher Columbus – the preeminent representative of the Italian-American community – to accomplish their unlawful goal.

115. The State Defendants actions in this regard were therefore outrageous, despicable, and shocking.

116. Plaintiff Piave Club was also entitled to due process before the Statue – which it holds an ownership interest in – was removed from its agreed upon location.

117. Plaintiff Piave Club was never given such due process, however, nor was it compensated for the deprivation of this prized historical artifact.

118. The absence of the Statue – previously a focal point of the Central Ohio Italian-American community – has caused extreme, ongoing distress amongst such community.

119. The Federal Defendants, through their monetary support of the State Defendants, have supported this unlawful deprivation of Plaintiffs' constitutional rights.

120. As discussed previously, at any time, the Federal Defendants can put an end to this illegal discrimination – yet they refuse to do so. *See*, *supra*, ¶¶ 102-105.

**WHEREFORE**, Plaintiffs respectfully requests judgment in their favor, ordering Defendants to compel the return of the Statue to its rightful place outside of Columbus City Hall, as well as, jointly and severally against all Defendants, for all compensatory, punitive, and other damages deemed just and equitable, including attorneys' fees, expert fees, and costs of suit.

**COUNT III**
**(VIOLATION OF OHIO CONSTITUTION)**
**PLAINTIFFS v. STATE DEFENDANTS**

121. Plaintiffs hereby incorporate by reference all prior paragraphs as if set forth fully at length herein.

122.   The Ohio Constitution provides that "All political power is inherent in the people [and] Government is instituted for their equal protection and benefit[.]" Ohio Const. art. I, § 2.

123.   Plaintiffs, as Italian-American, are owed this equal protection.

124.   The State Defendants have thoroughly undermined this constitutional guarantee of equal protection, through the discriminatory acts described herein.

125.   The State Defendants had no legitimate basis or rationale to discriminate against Italian-Americans, making their actions outrageous, shameful, and egregious.

126.   Instead, the Italian-American community was singled out as a public whipping boy by the State Defendants, leading to the illegal acts complained-of herein.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor against the State Defendants jointly and severally, awarding all compensatory, punitive, and other damages deemed just and proper, as well as attorneys' fees and costs of suit.

### COUNT IV
### (VIOLATION OF COLUMBUS CITY CHARTER)
### PLAINTIFFS v. STATE DEFENDANTS

127.   Plaintiffs hereby incorporate by reference all prior paragraphs as if set forth fully at length herein.

128.   The Columbus City Charter (hereinafter "Charter") has a Historic Preservation Code whose purpose is, among other things, "to maintain and enhance the value of buildings, structures and land throughout the city." Charter § 3101.01.

129.   The Columbus Art Commission, which nominally acted on the removal of this Statue, also holds various duties.

130. This includes the responsibility to "**[a]dvocate for public art and the inclusion of public art** and artists in the design and development of public spaces and facilities." Charter, § 3115.03(F) (emphasis added).

131. The Columbus Art Commission now stands in stark contrast with its stated mission, as it is **refusing** to advocate for the inclusion of the Statue – literally depicting the namesake of the City of Columbus and perhaps the single most important piece of public art in the entire city – in public spaces and facilities.

132. The Art Commission must also "[e]xamine, at least once every two (2) years, as city funding allows, all city monuments and works of art and **make a report to the Mayor, with recommendation for the future care and maintenance** thereof[.]" Charter, § 3115.03(D) (emphasis added).

133. The Art Commission appears to have **never** performed this task and, at a minimum, has completely failed to provide a recommendation to the Mayor "for the future care and maintenance" of the Statue.

134. Nor can the Art Commission Defendants substantively complete this task given their current posture; the only way to care and maintain the Statue is to return it to the pedestal on which it once stood, yet the Art Commission Defendants refuse to recommend this to the mayor.

135. The Statue was designed for outdoor use, it was not meant to waste away in a storage facility without any care or maintenance, as the State Defendants are now (illegally) mandating.

136. The materials and composition of the Statue are not suitable for such long-term storage, and this risks permanent and irreparable damage to it.

21

137. As such, the State Defendants stand in stark opposition to their stated mission, legal obligations, and ethical duties as public servants.

138. Therefore, even assuming *arguendo* that the Columbus Art Commission has jurisdiction under the Charter to regulate the Statue, they have completely failed to do so in compliance with the law.

139. Further examination of the Charter, however, reveals that the State Defendants' actions are even more legally dubious.

140. This is because, at a minimum, a separate body – the Historic Preservation and Architectural Review Commission (the "Historic Commission") – has concurrent jurisdiction over the Statue.

141. And, Plaintiffs submit, a thorough review of the Charter reveals that the Historic Commission has *exclusive* jurisdiction over the Statue.

142. Specifically, § 3116.04 provides that "no person shall construct, reconstruct, **alter**, change the exterior color of **or demolish** any listed property or architectural feature thereof or **any structure** or architectural feature now or hereafter in a district or make site improvements thereon without first applying for a certificate of appropriateness therefor and obtaining either such certificate of appropriateness or a clearance." *Id.* at § 3116.04 (emphasis added).

143. "Structure" is defined to include any "**monument**, work of art, or work of engineering permanently affixed to the land or any combination or any material thing of functional, aesthetic, cultural, **historical** or scientific value that may be by nature or design, **movable yet related to a specific setting or environment**[.]" *Id.* at § 3116.018 (emphasis added).

144. Likewise, "statue" is within the definition of "appurtenance" under the Charter, which then carries with it further obligations before such appurtenances can be altered. *See id.* at

22

§ 3116.011 (defining appurtenance - including statues); *see also id.* at § 3116.07(A) & (B) (requiring additional documentation when seeking to alter or demolish "appurtenances" like statues).

145.    Not only did the State Defendants not receive ***approval*** from the Historic Commission to remove the Statue, but **they did not even seek it**.

146.    The Historic Commission has not authorized the ongoing absence of the Statue from City Hall, and every day that passes is a continuing violation of this illegality.

147.    The Art Commission purporting to act on the Statue's removal – without the approval of the Historic Commission – is a legal nullity that is void *ab initio*.

148.    There is no legal basis on which the Statue should not be at its intended location outside of Columbus City Hall at this very moment.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor, and compel the return of the Statue to its rightful location, and preclude the State Defendants from any ongoing attempts act on its removal without following the protocols and procedures established in the Charter.

**COUNT V**
**(BREACH OF CONTRACT)**
**PLAINTIFFS PIAVE CLUB AND THE ESTATE v. STATE DEFENDANTS**

149.    Plaintiffs hereby incorporate by reference all prior paragraphs as if set forth fully at length herein.

150.    Plaintiff Piave Club was a party to this donation agreement between the cities of Genoa and Columbus.

151.    The Estate, as the ongoing representative of Alfieri, was also a party to such agreement.

23

152. Plaintiff Piave Club fully performed under this agreement, *i.e.* it connected the Cities of Genoa and Columbus, and successfully arranged for the transport, transfer, unveiling, and public display of the Statue.

153. Similarly, the Estate fully performed its obligations under the agreement; delivering a remarkable, one-of-a-kind Statue to stand forever more on the steps of Columbus City Hall.

154. Such agreement bequeathed the Statue on the condition that it be prominently displayed outside of Columbus City Hall – and indeed, it was for over 60 years.

155. The Statue's absence from this location violates the donation agreement between the parties.

156. Plaintiffs Piave Club and the Estate have been harmed by this breach, as the consideration they bargained for has been repudiated, and they can no longer see the Statue that they long cherished.

157. The parties expressly chose Columbus City Hall for the display of the Statue, because of its centralized location, easily accessible to the Italian-American community.

158. The location outside Columbus City Hall was also supposed to signal to the world that the City of Columbus stood behind its Italian-American community – something that is apparently no longer true – and this, too, was part of the parties' agreement upon the original transfer of the Statue.

159. Mere money damages would be completely inadequate to rectify this breach – only specific performance can make Plaintiffs Piave Club and the Estate whole here.

**WHEREFORE,** Plaintiffs Piave Club and the Estate respectfully request judgment in their favor against the State Defendants, compelling them to honor the City of Columbus' obligations

24

under the donation agreement, and return the Statue to its designated location outside Columbus City Hall.

## COUNT VI
## (VIOLATION OF THE SEPARATION OF POWERS)
## PLAINTIFFS v. STATE DEFENDANTS

160. Plaintiffs hereby incorporate by reference all prior paragraphs as if set forth fully at length herein.

161. As demonstrated by the 2015 Resolution, City Council has (at a minimum) coordinate and equal power over the Statue and Sister Cities Agreement. *See generally* Ex. G.

162. The State Defendants – *i.e.* persons working in executive agencies – do not have the authority to act unilaterally in regards to either the Statue or the Sister Cities Agreement with Genoa.

163. This is a blatant abuse of executive authority, with contradicts a **unanimous** resolution passed by City Council. *See generally* Ex. G.

164. Not only did the 2015 Resolution require that this arrangement be maintained, but it also endorsed the enactment of "even **stronger** social, cultural, and business related partnerships[.]" *See* Ex. G (emphasis added).

165. Therefore, not only does it violate the 2015 Resolution for the State Defendants to *weaken* the relationship between the Cities of Columbus and Genoa, but they actually have an affirmative obligation to *strengthen* this relationship as well.

166. Just as the Mayor and his bureaucrats cannot enact new laws without approval by City Council, they cannot repudiate an express ordinance passed by City Council regarding these matters.

167. The Statue is *required* to be at its original location, and every day that passes is a continuation of this illegal conduct.

168. Given the legal obligation of the State Defendants to **strengthen** the relationship with the City of Genoa, there is a present, affirmative duty to return the Statue to its rightful place under this agreement.

169. Doing so would begin to repair the severe harm the State Defendants have done to this relationship with the City of Genoa, comport with their legal obligations, and right the wrong that they continue to manifest to this day.

170. Ultimately, it is time for the State Defendants to admit "mea culpa," and perform their express obligations under the 2015 Resolution to strengthen the relationship between the Cities of Columbus and Genoa.

**WHEREFORE,** Plaintiffs respectfully request that judgment be entered in their favor against the State Defendants, and that the Statue be returned to its original location, which has been given the express approval of Columbus City Council, as well as attorneys' fees, costs of suit, and such other relief deemed just and equitable.

**COUNT VII**
**(VISUAL ARTISTS RIGHTS ACT OF 1990)**
**ESTATE v. STATE DEFENDANTS**

171. Plaintiffs hereby incorporate by reference all prior paragraphs as if set forth fully at length herein.

172. The Visual Artists Rights Act of 1990 ("VARA") protects the moral rights of an artist, regardless of whether they hold the copyright to such work or maintain physical possession.

173. Specifically "the author of a work of visual art . . . shall have the right . . . *to prevent any intentional distortion, mutilation, or other modification* of that work which would be

prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right, and [] ***to prevent any destruction of a work of recognized stature,*** and any intentional or grossly negligent destruction of that work is a violation of that right." 17 U.S.C. § 106A(a)(3) (emphasis added).

174.    Because the Statue was created before the effective date of VARA, the Estate's moral rights are coextensive with the rights conferred to copyrights generally, regardless of if such work was ever copyrighted. *Id.* at § 106A(d)(2).

175.    For works created before January 1, 1978 and ***not*** copyrighted (like the Statue), these rights endure for the life of the offer, plus 70 years. *See id.* at §§ 303(a) and 302(a).

176.    Alfieri died in 1998, meaning his moral rights continue until 2068.

177.    The Statue – as the most important piece of public art in all of Ohio – is of recognized stature, and the Estate has never consented to its destruction, modification, or mutilation.

**WHEREFORE,** the Estate respectfully request that judgment be entered in its favor against the State Defendants, and that the Statue be returned to its original location, which has been given the express approval of Columbus City Council, as well as attorneys' fees, costs of suit, and such other relief deemed just and equitable.

27

Respectfully submitted,

**BOCHETTO & LENTZ, PC**

Date: April 7, 2026

By:     */s/ Geroge Bochetto*
George Bochetto, Esquire (*pro hac vice forthcoming*)
Ryan T. Kirk, Esquire (*pro hac vice forthcoming*)
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900
gbochetto@bochettoandlentz.com
rkirk@bochettoandlentz.com

**DOUGHERTY, HANNEMAN & PICCIN, LLC**

By:     */s/ Joseph L. Piccin*
Joseph L. Piccin, Esquire
Trial Attorney
Ohio Bar Reg. No. 0072553
3010 Hayden Rd.,
Columbus, OH 43235
(614) 659-9616
JLP@joepiccin.com

*Attorneys for Plaintiffs*

## JURY DEMAND

A trial by jury is hereby requested by the maximum number of jurors allowed by law.

*/s/ Joseph L. Piccin*
JOSEPH L. PICCIN (0072553)

28

JS 44 (Rev. 03/24) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Columbus Piave Club, et al.

### DEFENDANTS

City of Columbus, et al.

**(b)** County of Residence of First Listed Plaintiff    Franklin
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Franklin
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Joseph L. Piccin, Dougherty, Hanneman & Piccin, LLC, 3010 Hayden Rd., Cols., OH 43235; 614-659-9616

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [x] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [x] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 367 Health Care/ Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander / Personal Injury Product Liability | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent [ ] 835 Patent - Abbreviated New Drug Application | [ ] 430 Banks and Banking [ ] 450 Commerce |
| [ ] 151 Medicare Act | [ ] 340 Marine | | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability / **PERSONAL PROPERTY** | | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / [ ] 370 Other Fraud | **LABOR** | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | [ ] 751 Family and Medical Leave Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| | | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [x] 440 Other Civil Rights / **Habeas Corpus:** | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General | | | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** / [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education / [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
54 U.S.C. §§ 300101 et seq.

Brief description of cause:
Violation of National Historic Preservation Act, federal and state Constitutions, City Charter, and breach of contract for removal of statue

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** unspecified

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE
04/07/2026

SIGNATURE OF ATTORNEY OF RECORD
/s/ Joseph L. Piccin (0072553)

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____